IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| **LIBERTY MUTUAL INSURANCE COMPANY** | |
| Plaintiff, | Case No.: 07 CV 11415 (LTS) |
| vs. | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| **FAIRWAY GROUP HOLDINGS CORPORATION,** and **FW OPERATING CORP. f/k/a FAIRWAY OPERATING CORPORATION** | |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff Liberty Mutual Insurance Company ("Plaintiff" or "Liberty"), by its undersigned counsel, for its Complaint for Declaratory Judgment against Defendants Fairway Group Holdings Corporation ("Fairway Group Holdings") and FW Operating Corp., formerly known as Fairway Operating Corporation ("Fairway Operating") (collectively, "Defendants") hereby states as follows:

## NATURE OF THE ACTION

1.      This is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 seeking a declaration of the parties' rights and obligations under contracts of insurance issued by Plaintiff to Defendants with regard to a lawsuit filed in the United States District Court for the Southern District of New York seeking statutory and punitive damages, and other relief, from Defendants for alleged willful violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681, *et seq.,* and the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. §1681c(g).

## THE PARTIES

2. Plaintiff Liberty Mutual Insurance Company is a Massachusetts corporation with its principal place of business in Boston, Massachusetts.  It is licensed to do business in the State of New York.

3. Upon information and belief, Defendant Fairway Group Holdings Corporation is a Delaware corporation with its principal place of business in the City and County of New York.

4. Upon information and belief, Defendant FW Operating Corp. formerly known as Fairway Operating Corporation, is a New York domestic corporation with its principal place of business in the City and County of New York.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).  There is complete diversity of citizenship between the parties, and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.  As set forth below, there is an actual controversy between the parties.

6. Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

7. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(a), as the policies at issue in this action were all issued in this district, Defendants reside and generally do business in this district and are subject to personal jurisdiction here, and a substantial part of the events and omissions alleged in the underlying lawsuit occurred in this district.

## THE UNDERLYING LAWSUIT AGAINST DEFENDANTS

8. On August 24, 2007, Jan Kaufman and Elliot Grubman, on behalf of themselves and all others similarly situated, filed a Class Action Complaint in the United States District Court for the Southern District of New York, captioned *Kaufman and Grubman v. Fairway Operating Corp., Fairway Central Services Corp., Fairway Group Holdings Corp., Fairway*

*Group Central Services LLC, Fairway Uptown LLC, Fairway Broadway LLC, Fairway Red Hook LLC, Fairway Brooklyn, LLC, Fairway Group Plainview LLC, Fairway Plainview, LLC, Fairway Group Acquisition Company*, No. 07CIV7525 ("*Kaufman* Complaint" or "*Kaufman* Lawsuit").

9.  The *Kaufman* Complaint alleges violation by the Defendants of the Fair and Accurate Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA"). *Kaufman* Complaint, ¶ 1.

10. The *Kaufman* Complaint includes the following allegations:

> 22.  A main provision of FACTA (codified as 15 U.S.C. § 1681c(g)) of the Fair Credit Reporting Act) provides that:
>
> > "No person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.
>
> 15 U.S.C. § 1681c(g)(1).
>
> 23.  With respect to machines that print receipts that were first put into use after January 1, 2005, 15 U.S.C. §1681c(g)(3)(B) required compliance with the provisions of 15 U.S.C. §1681c(g)(1) on or after December 4, 2004.
>
> 24.  With respect to machines that print receipts that were in use before January 1, 2005, 15 U.S.C. §1681c(g)(3)(B) required compliance with the provisions of 15 U.S.C. §1681c(g)(1) on or after December 4, 2006.

11. The *Kaufman* Complaint alleges that, on various dates from March 4, 2007 through July 13, 2007, Defendants provided Kaufman or Grubman with electronically printed receipts, at the point of a sale or transaction, on which the Defendants printed the expiration date of Kaufman or Grubman's credit cards. *Kaufman* Complaint, ¶¶ 29 & 30.

12. The *Kaufman* Complaint identifies two potential classes of persons:

>    **CLASS A**: All persons in the United States to whom, on or after January 1, 2005, the Defendants provided, through use of a machine that was first put into use by the Defendants on or after January 1, 2005, an electronically printed receipt at the point of a sale or transaction on which the Defendants printed more than the last five digits of the person's credit card or debit card number or printed the expiration date of the person's credit or debit card.
>
>    **CLASS B**: All persons in the United States to whom, on or after December 4, 2006, the Defendants provided, through use of a machine that was being used by the Defendants before January 1, 2005, an electronically printed receipt at the point of a sale or transaction on which the Defendants printed more than the last five digits of the person's credit card or debit card number or printed the expiration date of the person's credit or debit card.

*Kaufman* Complaint, ¶ 38.

13. The *Kaufman* Complaint alleges that "the Defendants and each of them willfully violated and continue to violate FACTA's requirements by, *inter alia*, printing more than five digits of the card number or the expiration date upon receipts with persons with whom the Defendants transact business." *Kaufman* Complaint, ¶ 36.

14. The *Kaufman* Complaint contains the following "1681c(g) PRAYER FOR RELIEF:"

>    WHEREFORE, Plaintiffs, on behalf of themselves and the members of CLASS A and CLASS B, pray for:
>
>    1. An order certifying CLASS A and CLASS B and appointing Plaintiffs as the representative of CLASS A and CLASS B and appointing the law firms representing Plaintiffs as counsel for CLASS A and CLASS B;
>
>    2. An award to Plaintiffs and the members of CLASS A and CLASS B of statutory damages under 15 U.S.C. § 1681n(a)(1)(A) for the Defendants' willful violations;
>
>    3. An award to Plaintiffs and the members of CLASS A and CLASS B of punitive damages under 15 U.S.C. § 1681n(a)(2);
>
>    4. Payment of costs of suit herein incurred under, *inter alia*, 15 U.S.C. § 1681n(a)(3);

      5.    Payment of reasonable attorneys' fees under, *inter alia*, 15 U.S.C. § 1681n(a)(3);

      6.    A permanent injunction enjoining Defendants and each of them from engaging in their unlawful violations of FACTA; and

      7.    For other and further relie[f] as the Court may deem just and proper.

## FAIR CREDIT REPORTING ACT

15.    The *Kaufman* Complaint seeks relief under the FCRA. FACTA, which was enacted in 2003, specified additional conduct proscribed under FCRA, specifically, "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." FACTA was implemented under 15 U.S.C. §1681c(g).

16.    FCRA contains two sections specifying the nature of civil liability for violations of the act, 15 U.S.C. §1681n & §1681o.

17.    Section 1681n, entitled "Civil liability for willful noncompliance," specifies various forms of relief based upon a finding of willful failure to comply with FCRA. Section 1681n states:

> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of –
>
> (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or
>
> [….]
>
> (2) such amount of punitive damages as the court may allow; and

> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

18. In contrast, §1681o, entitled "Civil liability for negligent noncompliance," specifies a more limited range of relief based upon a finding of negligent failure to comply with FCRA. Section 1681o states:

> Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of –
>
> (1) any actual damages sustained by the consumer as a result of the failure; and
>
> (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

## LIBERTY MUTUAL POLICIES

19. Liberty Mutual issued the following insurance policies to Fairway Group Holdings, in effect during the time period of conduct alleged in the *Kaufman* Complaint:

   a. TB1-121-093027-057, effective January 17, 2007 to May 21, 2007; and

   b. TB1-121-093027-107, effective May 21, 2007 to May 21, 2008.

20. Liberty Mutual issued the following insurance policies to Fairway Operating, in effect during the time period of conduct alleged in the *Kaufman* Complaint:

   a. TB1-121-089750-054, effective May 11, 2004 to May 11, 2005;

   b. TB1-121-089750-055, effective May 11, 2005 to May 11, 2006; and

   c. TB1-121-089750-056, effective May 11, 2006 to May 11, 2007.

Unless referred to individually, the above policies issued to Fairway Group Holdings and Fairway Operating are referred to collectively as the "Policies."

21. The Policies each has an "Each Occurrence Limit" of $1,000,000, a "Personal & Advertising Injury Limit" of $1,000,000 "Any one person or organization," and a "General Aggregate Limit" of $2,000,000.

22. Each of the Policies identifies certain entities as "Named Insured."

23. The "Who Is An Insured" Section of the Policies states, in part:

> **1.** If you are designated in the Declarations as: [….]
>
> > **d.** An organization other than a partnership, joint venture or limited liability company, you are an Insured. Your "executive officers" and directors are insureds, but only with respect to the conduct of your business. Your managers are also insureds, but only with respect to their liability as stockholders.

24. The "New York General Amendatory Endorsement" of the Policies contains the following additional definition of "Who Is Insured:"

> 4. Any organization other than a partnership or joint venture over which you maintain ownership interest of more than 50% will be deemed to be a Named Insured if there is no other similar insurance available to that organization. However:
>
> > a. Coverage A only applies to "bodily injury" or "property damage" that occurs while you maintain an ownership interest of more than 50%; and
> >
> > b. Coverage B only applies to "personal and advertising injury" arising out of an offense committed while you maintain an ownership interest of more the 50%.
>
> No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

25. Under Coverage A, the Policies state, in part, "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured

against any 'suit' seeking those damages even if the allegations of the 'suit' are groundless, false or fraudulent.  However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."

26. The Policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person.  It includes death or mental anguish, which results at any time from such physical harm, physical sickness or physical disease.  Mental anguish means any type of mental or emotional illness or distress."

27. The definition in the Policies of "property damage" includes "a.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b.  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

28. The Policies state, in part, under Coverage B, "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies.  We will have the right and duty to defend the insured against any 'suit' seeking those damages even if the allegations of the 'suit' are groundless, false or fraudulent.  However, we will have no duty to defend the insured against any 'suit' seeking damages for 'personal and advertising injury' to which this insurance does not apply."

29. The Policies define ""Personal and advertising injury" as:

**a.** Injury, including consequential "bodily injury", to the feelings and reputation of a natural person (including mental anguish) caused by an offense arising out of your business, except injury arising out of:

   **(1)** your "advertisement", of

   **(2)** publishing, broadcasting or telecasting done by or for you.

  **b.**  injury, including consequential "bodily injury", arising out of one of the following offenses:

    **(1)**  False arrest, detention or imprisonment;

    **(2)**  Malicious prosecution or abuse of process;

    **(3)**  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **(4)**  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **(5)**  Oral or written publication of material that violates a person's right to privacy;

    **(6)**  The use of another's advertising idea in your "advertisement"; or

    **(7)**  Infringing upon another's copyright, trade dress or slogan in your "advertisement".

  30.  The Policies define "advertisement" as follows:

"Advertisement means a paid announcement that is broadcast or is published in the print, broadcast or electronic media to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

  **a.**  Announcements that are published include material placed on the Internet or on similar electronic means of communication; and

  **b.**  Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

  31.  "Personal and advertising injury" coverage under the Policies is limited to "personal and advertising injury" caused by an offense arising out of the insured's business, but only if the offense was committed in the "coverage territory" during the policy period.

32.     The Policies contain an exclusion of coverage for "'[p]ersonal and advertising injury' arising out of oral or written publication of material whose first publication took place before the beginning of the policy period."

33.     The Policies contain the following exclusions under the coverage for "personal and advertising injury:

>   This insurance does not apply to:
>
>   **a.     Knowing Violation Of Rights Of Another**
>
>   "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."
>
>   [….]
>
>   **o.     Intentional Injury**
>
>   "Personal and advertising injury" arising out of an offense committed by or at the direction of the insured for the purpose of causing injury.

34.     Policy Nos. TB1-121-089750-056, TB1-121-093027-057 and TB1-121-093027-107 contain an exclusion for "Violation Of Statutes That Govern E-Mails, Fax, Phone Calls Or Other Methods Of Sending Material Or Information," which excludes coverage for, *inter alia*, "bodily injury," "property damage" and "personal and advertising injury" "arising directly or indirectly out of any action or omission that violates or is alleged to violate […] Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information."

35.     The Policies contain the following exclusion:

>   This insurance does not apply to: [….]
>
>   **e.     Contractual Liability**

> "Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have had in the absence of the contract or agreement.

36. The Policies contain the following condition, which states, in part:

> **F.    Transfer Of Your Rights And Duties Under This Policy**
>
> Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

## DEFENDANTS' CLAIM TO LIBERTY MUTUAL

37. On or about August 31, 2007, Defendants forwarded a copy of the *Kaufman* Complaint to Liberty Mutual.

38. On October 31, 2007, Liberty Mutual sent a letter to Fairway Group Holdings advising that Liberty Mutual will provide a defense for the *Kaufman* Lawsuit under Coverage B of Policy Nos. TB1-121-093027-057 and TB1-121-093027-107, under a full reservation of rights, including without limitation the right to deny indemnification, the right to terminate the defense if no possibility of indemnification is established, and the right to recoup defense costs.

39. On October 31, 2007, Liberty Mutual sent a letter to Fairway Operating advising that Liberty Mutual will provide a defense for the *Kaufman* Lawsuit under Coverage B of Policy Nos. TB1-121-089750-054, TB1-121-089750-055 and TB1-121-089750-056, under a full reservation of rights, including without limitation the right to deny indemnification, the right to terminate the defense if no possibility of indemnification is established, and the right to recoup defense costs.

40. Defendants have advised Liberty Mutual that if the plaintiffs in the *Kaufman* Lawsuit are successful in their theory of the case, Defendants face liability in excess of $75,000.

## FIRST CAUSE OF ACTION
**(Declaratory Judgment – No Duty to Indemnify
Under Personal And Advertising Injury Coverage)**

41. Liberty Mutual realleges and incorporates by reference the allegations of Paragraphs 1 through 40 of the Complaint.

42. Liberty Mutual contends that the *Kaufman* Lawsuit does not fall within the terms of Coverage B of the Policies for "personal and advertising injury," as defined by the Policies. For example, the conduct alleged in the *Kaufman* Lawsuit upon which relief is sought does not involve "oral or written publication." In addition, the conduct alleged in the *Kaufman* Lawsuit upon which relief is sought does not "violate[] a person's right to privacy." Liberty Mutual contends, therefore, that it does not have a duty to indemnify Defendants under this coverage.

43. Defendants contend that the Policies provide coverage for the *Kaufman* Lawsuit under Coverage B of the Policies for "personal and advertising injury." An actual controversy exists, and Liberty Mutual has no adequate remedy at law to resolve this controversy.

## SECOND CAUSE OF ACTION
**(Declaratory Judgment – No Duty To Indemnify
Under Bodily Injury And Property Damage Coverage)**

44. Liberty Mutual realleges and incorporates by reference the allegations of Paragraphs 1 through 43 of the Complaint.

45. Liberty Mutual contends that the *Kaufman* Lawsuit does not fall within the terms of Coverage A of the Policies for "bodily injury" or "property damage" caused by an "occurrence," as those terms are defined by the Policies. Liberty Mutual contends, therefore, that it does not have a duty to indemnify Defendants under this coverage.

46. Defendants contend that the Policies provide coverage for the *Kaufman* Lawsuit under the Policies, such as for "bodily injury" or "property damage" caused by an "occurrence."

An actual controversy exists, and Liberty Mutual has no adequate remedy at law to resolve this controversy.

### THIRD CAUSE OF ACTION
### (Declaratory Judgment – No Duty To Indemnify
### Under Policy Exclusions Concerning Knowledge And Intent)

47. Liberty Mutual realleges and incorporates by reference the allegations of Paragraphs 1 through 46 of the Complaint.

48. Liberty Mutual contends that coverage for the *Kaufman* Lawsuit is barred by exclusions in the Policies concerning knowledgeable and intentional conduct of Defendants. For example, the Policies exclude coverage for "personal and advertising injury" for "Knowing Violation Of Rights Of Another" and "Intentional Injury," as defined in the Policies.

49. Defendants contend that the Policies provide coverage for the damages in the *Kaufman* Lawsuit and that coverage is not barred by the Policy exclusions. An actual controversy exists, and Liberty Mutual has no adequate remedy at law to resolve this controversy.

### FOURTH CAUSE OF ACTION
### (Declaratory Judgment – No Duty To Indemnify
### Under Policies Containing Exclusion For Violation Of Statutes That Govern
### E-Mails, Fax, Phone Calls Or Other Methods Of Sending Material Or Information)

50. Liberty Mutual realleges and incorporates by reference the allegations of Paragraphs 1 through 49 of the Complaint.

51. Liberty Mutual contends that coverage for the *Kaufman* Lawsuit is barred under Policy Nos. TB1-121-089750-056, TB1-121-093027-057 and TB1-121-093027-107 by the exclusion for "Violation Of Statutes That Govern E-Mails, Fax, Phone Calls Or Other Methods Of Sending Material Or Information."

52.     Defendants contend that the Policies provide coverage for the damages in the *Kaufman* Lawsuit and that coverage is not barred by this Policy exclusion. An actual controversy exists, and Liberty Mutual has no adequate remedy at law to resolve this controversy.

### FIFTH CAUSE OF ACTION
### (Declaratory Judgment – No Duty To Indemnify For Relief That Are Not Covered Damages)

53.     Liberty Mutual realleges and incorporates by reference the allegations of Paragraphs 1 through 52 of the Complaint.

54.     Liberty Mutual contends that the relief sought in the *Kaufman* Lawsuit under 15 U.S.C. §1681n, including statutory damages, punitive damages, attorneys fees and costs, are not covered under the Policies and/or are not insurable by public policy. Liberty Mutual does not have a duty to indemnify Defendants for such relief.

55.     Liberty Mutual further contends that certain relief sought in the *Kaufman* Lawsuit do not constitute "damages" under the Policies. For example, any injunctive relief, attorneys fees and costs are not "damages" under the Policies. Liberty Mutual does not have a duty to indemnify Defendants for such relief.

56.     Defendants contend that the Policies provide coverage under the Policies for the relief sought in the *Kaufman* Lawsuit, including statutory and punitive damages, injunctive relief, attorneys fees and costs and other non-damages relief. An actual controversy exists, and Liberty Mutual has no adequate remedy at law to resolve this controversy.

### SIXTH CAUSE OF ACTION
### (Declaratory Judgment – No Duty To Indemnify For Offenses Outside the Policy Period)

57.     Liberty Mutual realleges and incorporates by reference the allegations of Paragraphs 1 through 56 of the Complaint.

58.  Liberty Mutual contends that it does not have a duty to indemnify Defendants for any offenses committed outside of the policy period of the Policies.

59.  Defendants contend that Liberty Mutual has a duty to indemnify under the Policies for all offenses alleged in the *Kaufman* Lawsuit, including offenses outside the policy period of the Policies.  An actual controversy exists, and Liberty Mutual has no adequate remedy at law to resolve this controversy.

### SEVENTH CAUSE OF ACTION
### (Declaratory Judgment – No Duty To Indemnify For Personal or Advertising Injury Arising from Publication of Material First Published Before the Policy Period)

60.  Liberty Mutual realleges and incorporates by reference the allegations of Paragraphs 1 through 59 of the Complaint.

61.  Liberty Mutual contends that it does not have a duty to indemnify Defendants for personal and advertising injury arising out of oral or written publication of material whose first publication took place before the beginning of the policy period of the Policies.

62.  Defendants contend that Liberty Mutual has a duty to indemnify under the Policies for all personal and advertising injury alleged in the *Kaufman* Lawsuit, including arising from publication of material whose first publication took place before the beginning of the policy period of the Policies.  An actual controversy exists, and Liberty Mutual has no adequate remedy at law to resolve this controversy.

### EIGHTH CAUSE OF ACTION
### (Declaratory Judgment – Duty To Defend Limited To Reasonable And Necessary Defense Costs)

63.  Liberty Mutual realleges and incorporates by reference the allegations of Paragraphs 1 through 62 of the Complaint.

64. Liberty Mutual contends, to the extent that it has a duty to defend for the *Kaufman* Lawsuit, it is obligated to pay only reasonable and necessary defense costs.

65. Defendants contend that any duty to defend for the *Kaufman* Lawsuit under the Policies is not limited to reasonable and necessary defense costs, or alternatively, Defendants disagree with Liberty Mutual as to what constitutes reasonable and necessary defense costs. An actual controversy exists, and Liberty Mutual has no adequate remedy at law to resolve this controversy.

## NINTH CAUSE OF ACTION
**(Declaratory Judgment – Additional Scope Of Coverage)**

66. Liberty Mutual realleges and incorporates by reference the allegations of Paragraphs 1 through 65 of the Complaint.

67. Provisions of the Policies other than those enumerated above may bar or limit coverage for the *Kaufman* Lawsuit. Merely by way of example, the Policies provide coverage to "insureds" or "Named Insureds," as defined under the Policies. The Policies also contain a condition prohibiting the transfer of rights and duties under the Policies without Liberty Mutual's written consent and an exclusion under Coverage B for Contractual Liability. The Policies also contain terms concerning determination of limits.

68. Liberty Mutual is also entitled to terminate the defense and recover past defense costs if the Court determines that Liberty Mutual has no duty to indemnify Defendants for the *Kaufman* Lawsuit or when the limits of insurance are used up.

69. Liberty Mutual reserves the right to raise such additional issues relating to its rights and obligations under the Policies as may be appropriate upon further investigation and discovery.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Liberty Mutual prays that the Court grant the following relief against Defendants:

1. As to the First Cause of Action, Declaratory Judgment that Liberty Mutual has no duty to indemnify Defendants for the *Kaufman* Lawsuit under Coverage B for "personal and advertising injury," including for "oral or written publication of material that violates a person's right to privacy" under the Policies.

2. As to the Second Cause of Action, Declaratory Judgment that Liberty Mutual has no duty to indemnify Defendants for the *Kaufman* Lawsuit under Coverage A for "bodily injury" or "property damage" caused by an "occurrence" under the Policies.

3. As to the Third Cause of Action, Declaratory Judgment that Liberty Mutual has no duty to indemnify Defendants for the *Kaufman* Lawsuit under exclusions in the Policies concerning knowledge and intent.

4. As to the Fourth Cause of Action, Declaratory Judgment that Liberty Mutual has no duty to indemnify Defendants for the *Kaufman* Lawsuit under Policies that contain an exclusion for "Violation Of Statutes That Govern E-Mails, Fax, Phone Calls Or Other Methods Of Sending Material Or Information."

5. As to the Fifth Cause of Action, Declaratory Judgment that Liberty Mutual has no duty to indemnify Defendants under the Policies for the relief sought in the *Kaufman* Lawsuit, including statutory and punitive damages, injunctive relief, attorneys fees, costs and any other non-damages relief.

6. As to the Sixth Cause of Action, Declaratory Judgment that Liberty Mutual has no duty to indemnify for offenses in the *Kaufman* Lawsuit committed outside of the policy period of the Policies.

7. As to the Seventh Cause of Action, Declaratory Judgment that Liberty Mutual has no duty to indemnify for personal and advertising injury in the *Kaufman* Lawsuit arising from oral or written publication of material whose first publication took place before the beginning of the policy period of the Policies.

8. As to the Eighth Cause of Action, Declaratory Judgment that any duty by Liberty Mutual to defend Defendants for the *Kaufman* Lawsuit is limited to reasonable and necessary defense costs.

9. As to the Ninth Cause of Action, Declaratory Judgment concerning additional issues relating to its rights and obligations under the Policies as may be appropriate; and

10. Such other relief as the Court may deem just and proper.

Dated: December 19, 2007

Respectfully submitted,

_____
Michael E. Twomey (MET- 7839)
Twomey, Hoppe & Gallanty, LLP
757 Third Avenue
New York, NY  10017
Phone:  212.688.0400
Fax:  212.688.1929


Of Counsel:

Laura A. Foggan
Dale E. Hausman
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C.  20006
Phone: 202.719.7000
Fax:  202.719.7049

*Attorneys for Plaintiff Liberty Mutual Insurance Company*